UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUNOR DOUGLAS,

    Petitioner,

v.

RAUL LOPEZ,

    Respondent.

Case No. 11-cv-06300-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Junor Douglas seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2008, a Napa County Superior Court jury found Douglas, who was tried alongside his brother and co-defendant Marquis, guilty of second degree murder, shooting at an inhabited dwelling, discharging a firearm in a grossly negligent manner, and possession of a firearm by a minor. He received a sentence of 70 years-to-life in state prison. He appealed, lost, sought a state writ of habeas corpus, and lost again. This federal

habeas petition followed.

Evidence presented at trial showed that in 2007, Douglas shot and killed Anthony Gee during a teenager's party. He testified at trial that he shot Gee accidentally when the gun jammed while he was firing into the air. He contends he was motivated to fire the gun because he feared the "Bridge Boys," members of a gang present at the party. (Ans., Ex. 2 (State Appellate Opinion, *People v. Douglas*, Nos. A122832, A122888, 2010 WL 1511752 (Cal. Court. App. Apr. 15, 2010) (unpublished) at 2-7.)

As grounds for federal habeas relief, Douglas alleges that (1) defense counsel rendered ineffective assistance; (2) the imposition of sentencing enhancements violates his constitutional rights; (3) the trial court violated his right to due process when it failed to stay a sentence; (4) the restitution fine violates state law; (5) his statements to police were admitted at trial in violation of the Fifth Amendment; and (6) a juror failed to disclose a bias.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I.     Assistance of Defense Counsel

Douglas claims that defense counsel rendered ineffective assistance by failing to (A) request a specialized self-defense instruction, (B) object to the jury's request to see a videotape of a witness's testimony during deliberations, and (C) object to his being tried

jointly with Marquis.[1]

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687-68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 690 ). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the

---

[1] Petitioner also alleges without elaboration that appellate counsel rendered ineffective assistance. This claim is DENIED because the claim is entirely conclusory and undetailed, and therefore does not meet the specificity requirements of *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Id.* at 788 (quotation and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A.     Specialized Self-Defense Instruction

Petitioner claims that defense counsel rendered ineffective assistance by failing to request "an additional instruction [CALJIC No. 8.40, 'Voluntary Manslaughter — Defined'] that explicitly associated unreasonable self-defense with a killing committed unintentionally but in conscious disregard for life." (Ans., Ex. 2 at 8.) The state appellate court rejected this claim because the evidence did not support "*any* instruction on unreasonable self-defense":

> Here, Junor's primary defense was not a theory of self-defense, but rather that he shot the victim accidentally when the gun jammed while he was firing into the air, an act that was neither intentional nor committed with 'disregard of the consequences.' Junor also secondarily claimed that he fired the gun in anger 'at the head butt' and out of fear 'he was about to be jumped' by the 'Bridge Boys,' but critically, he neither argued nor presented any evidence that the shooting was in response to an imminent threat of harm from anyone. In fact, counsel acknowledged during closing argument that 'this is not imperfect self-defense,' and Junor 'didn't have a belief in imminent peril that's sufficient to satisfy the law.' The essential theory of the defense was that Junor's fear of the Bridge Boys and 'misplaced desire to defend himself' set 'in motion' a shooting that was an accidental rather than intentional act. An instruction on unreasonable self-defense was not entirely consistent with defendant's theory of the case. [Citations omitted.]

> More importantly, self-defense, whether perfect or imperfect, also requires evidence that the defendant 'actually believes he must defend himself from imminent danger of death or great bodily injury' when the killing was committed. [Citations omitted.] . . .
>
> Evidence that Junor faced an imminent threat of harm when he fired the shots is entirely absent from the record.  Both he and Alfonzo expressed some generalized fear of the Bridge Boys, who may have arrived at the party in response to Alfonzo's argument with a girl.  They exchanged 'hand signs' and 'mugging' with one or two of the Bridge Boys, but nothing further happened.  The shooting was not in response to any act or threat by the Bridge Boys, but instead was directed exclusively at the chaperone who head-butted Junor and threw him out of the garage.  No testimony was offered that after Junor was told to leave the party anyone threatened him in any way.  He was certainly angry and may have also been in an indistinctly frightened state, but he did not fire the shots in response to any imminent threat of harm; there was none.
> . . . .
>
> . . . Thus, defense counsel clearly cannot be scolded for failing to request a clarification of the self-defense instruction that had no basis in the evidence presented, and defendant did not suffer any prejudice as a result of the omission of a CALJIC No 8.40 instruction.  [Citation omitted.]

(Ans., Ex. 2 at 9-12.)

Habeas relief is not warranted here.  There was no evidence to support an unreasonable self-defense instruction — there was no proof of an imminent threat or proof that petitioner believed himself to be under such a threat.  Also, if the requested instruction had been given, the defense would likely have been damaged.  Not only would the lack of evidence make the petitioner's case look flawed but also the desired instruction contradicted petitioner's assertion that the shooting was an accident.  Because there was no reason to request such an instruction, defense counsel's performance cannot plausibly be thought deficient.  The lack of evidence also dooms any attempt to show prejudice. Accordingly, the state appellate court's rejection of the claim was reasonable and this claim

is DENIED.

### B.     Jury's Viewing of Videotape Evidence

Tanika W. was a witness to the events that night. During Tanika W.'s testimony at trial, a videotape of her testimony at Douglas's preliminary hearing was admitted into evidence over the objection of defense counsel as a prior inconsistent statement and was played for the jury. (Ans., Ex. 2 at 13.) Petitioner claims that counsel rendered ineffective assistance by failing to object again when the jury asked to see the videotape during its deliberations.

The state appellate court rejected this claim because counsel's failure to object was a reasonable tactical decision and because any objection would have been denied:

> As a threshold matter we find that [Douglas] has not discounted a tactical reason for counsel's failure to object to the jury's consideration of the videotape during deliberations. After the evidence was admitted over defense objection, counsel may have decided that [Douglas] would benefit from the jury's access to the videotape in the jury room. We do not know, but the critical consideration is that we have no way of discerning from the record if counsel's actions were the result of ignorance or based on an informed tactical decision. We cannot speculate, and without a definitive indication in the record before us of inexcusable ignorance or oversight by [Douglas's] attorney rather than strategic considerations as the basis for the lack of an objection, we cannot find inadequate assistance of counsel on appeal. [Citations omitted.]
>
> In any event, we find that an objection to consideration of the videotape by the jury would not have been successful. . .
>
> . . . .
>
> Here, the DVD of T[anika]'s preliminary hearing testimony was admitted in evidence and played for the jury at trial. Granting the jury the opportunity during deliberations to review her appearance and demeanor while she testified was a proper exercise of the trial court's discretion, and not in the least unfair to [Douglas]. [Citations omitted.]

(Ans., Ex. 2 at 13-15.)

Habeas relief is not warranted for this claim. In California, transcripts of testimony, interviews given by witnesses and tape recordings which have been admitted in evidence may be given to the jury for their consideration. *See People v. Fujita*, 43 Cal. App. 3d 454, 473 (1974); *People v. Beverly*, 233 Cal. App. 2d 702, 718 (1965); *People v. Douglas*, 66 Ca. App. 3d 998, 1001, 1006 (1977); Cal. Penal Code section 1137. Defense counsel had already unsuccessfully objected to the introduction of the videotape at trial. It is reasonable to assume that counsel thought a similar objection also would have been denied, especially considering that the jury was reviewing evidence already presented at trial. It is both reasonable and not prejudicial for an attorney to forego a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Counsel's decision not to renew his objection when the jury asked to view the evidence during deliberations cannot plausibly be thought deficient. The state appellate court's decision was reasonable and is entitled to AEDPA deference. This claim is DENIED.

### C. Severance

Douglas was tried jointly with his brother Marquis. Defense counsel's motion to sever the trials was denied. Douglas now claims that defense counsel rendered ineffective assistance by not also objecting to the joint trial.

Douglas presented this claim only to the state supreme court, which summarily denied it. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v.*

*Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable."  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials.  *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997).  Nor is it concerned with the procedural right to severance afforded in federal trials.  *Id.*  Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution.  To prevail, therefore, the petitioner must demonstrate that the state court's denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair.  *Id.*

The Supreme Court, in interpreting severance under the federal rules, declared that a severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence":

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant . . . Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.  [Citation omitted.]  Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. [Citation omitted.]

9

*Zafiro v. United States*, 506 U.S. 534, 539 (9th Cir. 1993).  "[L]imiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citation omitted.)

Douglas's underlying claim is that the trial court violated his constitutional rights by denying the motion to sever.  Such claim lacks merit.  Douglas has not shown any prejudice arising from the denial of the severance motion, let alone that the denial deprived him of a fair trial.  He has not identified any evidence that (i) would have been inadmissible if he were tried alone, (ii) was technically admissible against Marquis alone, or (iii) was exculpatory and excluded because it was a joint trial.  Moreover, any possibility of prejudice was eliminated by the trial court's instructions regarding reasonable doubt and that evidence and statements admitted solely as to one defendant could not be considered against the other.  Jurors are presumed to follow their instructions.  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).  Douglas has not overcome this presumption.

Accordingly, habeas relief is not warranted.  As with the prior claim, counsel's declination to raise a second objection cannot plausibly be thought deficient.  It is reasonable to assume that counsel thought renewing his objection would have been denied, especially considering that there was no new basis for such an objection.  It is both reasonable and not prejudicial for an attorney to forego a meritless objection.  *See Juan H.*, 408 F.3d at 1273.  The state appellate court's decision was reasonable and is entitled to AEDPA deference.  This claim is DENIED.

## II. Imposition of Sentencing Enhancements

Douglas claims that the trial court violated his (A) double jeopardy, (B) Eighth Amendment, (C) Sixth Amendment, and (D) due process rights when it imposed two sentencing enhancements under Cal. Penal Code section 12022.53(d),[2] one attached to his conviction for murder, the other to shooting at an occupied dwelling.[3]

The state appellate court rejected these claims:

> [W]e are persuaded . . . that the imposition upon [Douglas] of two enhancements for personal firearm use violates neither the legislative objectives of the statute nor any constitutional principles. [Douglas] fired a gun at a building that was occupied by numerous party guests, and in the process killed one of them. As we have observed, two distinct objectives may have been associated with his acts, which were also directed at multiple victims. His commission of two qualifying convictions against multiple victims justified the imposition of two section 12022.53 enhancements without violation of any constitutional proscriptions against disproportionate sentencing.

(Ans., Ex. 2 at 20.) While Douglas received a stiff sentence --- 70 years to life --- his crimes were violent and ended in murder. For the reasons below, Douglas's claims regarding the sentencing enhancements are DENIED.

### A. Double Jeopardy

The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395-96 (1995). Douglas contends that the imposition of the two sentence enhancements punishes him twice for essentially the

---

[2] "Sentence enhancements for persons convicted of enumerated felonies who use firearm in commission of the crime."

[3] Petitioner alleges that the imposition of the upper-term violated his constitutional rights. No upper-term sentence was imposed, however, and this claim necessarily fails. The claim is DENIED.

11

1   same act, that is, for shooting into a crowd.

2       Here, Douglas was not doubly punished for the same crime.  As the state appellate

3   court reasonably concluded, each enhancement was attached to a conviction for a crime

4   distinct from the other.  Douglas fired a gun into an occupied dwelling and killed someone.

5   The jury could reasonably find two different objectives associated with those acts, directed

6   at multiple victims.  There was no double jeopardy violation.  Accordingly, the state

7   appellate court's rejection of this claim is entitled to AEDPA deference.  This claim is

8   DENIED.

## B. Eighth Amendment

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment.  *Solem v. Helm*, 463 U.S. 277, 303 (1983).  Yet successful challenges to the proportionality of particular sentences are "exceedingly rare" outside "the context of capital punishment."  *Id.* at 289-90.  Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle --- the precise contours of which are unclear."  *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence

12

received by the defendant to those received by other defendants for other crimes. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

The Supreme Court upheld a life sentence without the possibility of parole for an offender whose sole felony conviction was for possessing 672 grams of cocaine. *Harmelin*, 501 U.S. at 995, 961. In *Andrade*, the Supreme Court, under the highly deferential AEDPA standard, upheld a sentence of two consecutive 25 year terms for the nonviolent theft of $150 worth of videotapes. 538 U.S. at 77.

Habeas relief is not warranted here because there is no Eighth Amendment violation. Douglas was sentenced to 70 years to life for his murder of Gee and his use and possession of a gun. If, as in *Harmelin*, a life sentence for a single nonviolent drug possession conviction did not violate the Eighth Amendment, then petitioner's total sentence also cannot. If his total sentence does not violate the Eighth Amendment, then the imposition of the two enhancements does not. Similarly, the imposition of the sentencing enhancements on their own does not fall afoul of the Eighth Amendment. If a life sentence for a nonviolent drug possession conviction (*Harmelin*) does not violate the Eighth Amendment, the sentencing enhancements imposed for violent crimes that ended in murder do not. The state appellate court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference. This claim is DENIED.

C.     **Sixth Amendment**

Douglas claims that the imposition of the enhancements violated his right to have a jury decide the facts of the case. The jury did consider the sentencing enhancement allegations and found them true. (Ans., Ex. 11, Vol. 37 at 6214-15.) This claim is

DENIED.

### D. Due Process

Douglas claims that the imposition of a consecutive sentence of 25 years-to-life with the sentencing enhancements violated his right to due process. This claim is foreclosed by case law. "The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011). This claim is DENIED.

### III. Trial Court's Declination to Stay Sentence

Douglas claims that the trial court violated due process and state law by failing to stay, pursuant to California Penal Code section 654, his sentence for shooting at an inhabited dwelling. This claim was raised only to the state supreme court, which summarily denied it.

The decision to stay a sentence pursuant to section 654 is a matter of state law, and therefore is not cognizable here. State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Cooke*, 131 S. Ct. at 861-62. The state court's decision was not objectively unreasonable and is entitled to AEDPA deference. Douglas's claim is DENIED.

### IV. Restitution

Douglas claims that the trial court violated state law by imposing a restitution fine

without considering his ability to pay. He also claims that his counsel rendered ineffective assistance by failing to object to the fine. This claim was raised only to the state supreme court, which summarily denied it.

Habeas relief is not warranted here because success on this claim would not result in a voiding of the verdict or a reduced sentence. A petition for writ of habeas corpus is the appropriate avenue through which a state prisoner can challenge "the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). The writ is available only to persons "in custody" at the time the petition is filed, however. 28 U.S.C. §§ 2241(c), 2254(a); *see Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). A monetary fine is not a sufficiently significant restraint on liberty to satisfy the custody requirement. *See Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987). Nor does the fact that petitioner also challenges his custody suffice to confer jurisdiction on this Court to review his restitution claim by way of a federal habeas petition. *See United States v. Thiele*, 314 F.3d 399, 401-02 (9th Cir. 2002). Furthermore, the claim alleges a violation of state law. State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Cooke*, 131 S. Ct. at 861-62. The state court's decision was not objectively unreasonable and is entitled to AEDPA deference. Douglas's claim is DENIED.

## V. Admission of Statements to Police

Douglas claims that admission of his statements to the police violated his Fifth Amendment right against self-incrimination. This claim was raised only to the state supreme court, which summarily denied it.

15

The police twice interviewed Douglas, but did not give the *Miranda* warnings until the end of the first interview. The trial court, pursuant to defense counsel's motion, admitted only part of the first interview and none of the second. (Ans., Ex. 1, Vol. 2 at 383.) The part that was introduced at trial (*id.*, Ex. 1, Argument 1 at 51-71) contains no statements implicating Douglas in the shooting, but has instead general statements about his age and background, how he came to be at the party, and his fears about the Bridge Boys. (*Id.*) His trial testimony largely repeated the admitted the interview statements, and provided greater detail about the circumstances of the shooting. (*Id.*, Ex. 11, Vol. 31 at 4459-62.)

A person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements he makes can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *Id.* The remedy for a violation of these requirements is the suppression, at the subsequent trial, of the statements made incriminating the defendant in the crime about which he was questioned. *Id.* at 479.

Applying these legal principles to this case, the Court concludes that the state supreme court reasonably determined that the admission of some his statements to police did not violate Douglas's Fifth Amendment rights. As discussed above, the statements described background details, none of which incriminated Douglas. Also, his later trial

16

testimony largely repeated what was in the admitted statements, and was far more incriminating. Because the statements admitted were not incriminating, the state court's decision was not objectively unreasonable and is entitled to AEDPA deference. Douglas's claim is DENIED.

**VI.   Alleged Juror Bias**

Douglas claims that Juror 7 failed to disclose that he was a member of the Calistoga City Council. During voir dire, Juror 7 disclosed that he was the former fire chief of Calistoga and a member of the Calistoga Rotary Club. (Ans., Ex. 11, Vol. 41 at 77-78.) Nothing in the record indicates that Juror 7 was a member of the Calistoga City Council. This claim was raised only to the state supreme court, which summarily denied it.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted). Due process requires that the defendant have a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

Douglas's claim cannot succeed. There is nothing to support his allegations, nor is there anything in the record to suggest that Juror 7 was anything other than fair and impartial. Douglas failed to demonstrate how being a member of the Calistoga City Council would render the juror impartial. Furthermore, Juror 7 was instructed, as all the

17

jurors were, that he should not be influenced by bias or prejudice, and to base his decision solely on the evidence presented at trial.  (Ans., Ex. 11, Vol. 35 at 5503.)  Jurors are presumed to follow their instructions, *see Marsh*, 481 U.S. at 206.  This Court, then, must presume that Juror 7 adhered to the instructions to be fair and impartial.  Douglas has not overcome this presumption.  No Sixth Amendment violation occurred.  The state court's decision was not objectively unreasonable and is entitled to AEDPA deference.  Douglas's claim is DENIED.

## CONCLUSION

The state court's adjudication of Douglas's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:**  October 29, 2013



WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JUNIOR DOUGLAS,

         Plaintiff,

  v.

RAUL LOPEZ et al,

         Defendant.
                                    /

Case Number: CV11-06300 WHO

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 29, 2013, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail.

Junor Douglas G-34804
3A02-206U
California State Prison - Corcoran
P.O. Box 3461
Corcoran, CA 93212-3461

Dated: October 29, 2013

Richard W. Wieking, Clerk
By: Jean Davis, Deputy Clerk